IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **MATTHEW BRYAN VOSBURGH,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 5:12-cv-299 (MTT) (CHW)** |
| | : | |
| **Warden CARL HUMPHREY,** *et al.*, | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Now before the Court is a Motion to Dismiss filed by Defendants Carl Humphrey, John Harper, Victoria Malone, Dawn Smith, Joseph Fowlkes, Brian Owens, and Bruce Scott. (Doc. 46). Because Plaintiff failed to exhaust his available administrative remedies regarding many of claims, and because he fails to state a claim for relief under either Title II of the ADA or 42 U.S.C. § 1983 regarding his remaining claims, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED** and that Plaintiff's Complaint be **DISMISSED**.

## BACKGROUND

Plaintiff Matthew Bryan Vosburgh, a prisoner, is currently housed at Central State Prison in Macon, Georgia. (Doc. 11). From January to September 2012, however, Plaintiff was housed at the Georgia Diagnostic and Classification Prison (GDCP) in Butts County, Georgia. (Doc. 1, p. 4; Doc. 8). While Plaintiff's amended Complaint (Docs. 1, 23) and associated filings (Docs. 7, 9-2) do not clearly define the contours of his legal claims, the instant lawsuit largely concerns the living conditions in "E-house," Plaintiff's cell-block while at the GDCP. Plaintiff alleges that he has "been disabled since November 2006 so [that he] walk[s] with a cane," (Doc. 1, p. 34), and he argues, in his standard-form § 1983 complaint, that the E-house facilities—particularly the

showers—are "not up to codes with [the] Americans with Disabilities Act and [with] State and Federal laws for handicap inmates." (Doc. 1, p. 5). An informal grievance dated May 29 shows that Plaintiff requested "handicap rails in E-house and in each shower in E-house and every other Dorm[] where there is no handicap rails." (Doc. 1, p. 38). Plaintiff's request was apparently not fulfilled, though, and on June 8, Plaintiff suffered from an alleged slip-an-fall in the E-house shower. (Doc. 1, p. 5). Plaintiff claims that the June 8 slip-and-fall resulted in lumber, neck and head injuries, and that it left him wheelchair-bound. (*Id.*).

Following the June 8 slip-and-fall, Plaintiff filed another informal grievance, dated June 29, in which he requested "ramps to showers, non-slip flooring, shower chairs, cell doors wider for wheelchairs, [and] wider doors on cells where phones are at." (Doc. 1, p. 41). Like the requests made in the May 29 grievance, Plaintiff's June 29 grievance-requests were not apparently fulfilled. Plaintiff now asks the Court to order "all GA prisons [to] comply with ADA codes [and] with State and Federal Guidelines." (Doc. 1, pp. 6-7). Plaintiff also asks the Court to award him a range of compensatory damages, as well as punitive damages. (Doc. 1, pp. 6-7).

In addition to his Complaint and associated exhibits, Plaintiff also filed several "Detail Log" reports, which describe Plaintiff's day-to-day activities from 5/29/12 to 7/20/12, (Doc. 1, pp. 11-31), 7/21/12 to 9/19/12, (Doc. 7), and 9/20/12 to 9/27/12, (Doc. 9-2, pp. 1-3). As indicated in the Court's February 28 Order, these log reports include allegations of: (1) several instances of the denial of medical treatment; (2) abuse from fellow prisoners, including one instance of sexual assault; and (3) a "yard call" incident, during which Plaintiff, who claims to be immobile, was left in the sun for over three hours. (Doc. 15, p. 4). There is no clear indication that, in filing the instant lawsuit, Plaintiff sought to base a formal claim for judicial relief upon these allegations. Even if Plaintiff did intend to seek judicial relief, though, there is no evidence in the record

suggesting that Plaintiff even attempted to exhaust his available administrative remedies regarding most of the potentially-actionable facts alleged in his log reports.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Pursuant to 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement is a non-waivable precondition to litigation on the merits, *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008), and the Eleventh Circuit has held that the exhaustion of available administrative remedies is mandatory even when the grievance procedures set forth by a prison are futile or inadequate. *Alexander v. Hawk*, 159 F.3d 1321, 1326 (1998).

Because exhaustion is "a matter in abatement," courts determining exhaustion may consider facts outside of the pleadings and may resolve factual disputes, so long as those disputes do not decide the merits and so long as the parties have a sufficient opportunity to develop a record. *Bryant*, 530 F.3d at 1376. When a motion to dismiss is based on the affirmative defense of failure to exhaust, the review of the motion involves a two-step process. See *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, the court looks to the facts alleged in both the motion itself and in the plaintiff's response. *Id.* at 1082. If the alleged facts conflict, the court takes the plaintiff's version of the facts as true. *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, making specific findings of fact to resolve the

disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

During the period relevant to Plaintiff's case, the Georgia Department of Corrections' Standard Operating Procedure (GDC SOP) set-forth a three-step grieving procedure, requiring the filing of (i) an informal grievance; (ii) a formal grievance; and (iii) an appeal. (Doc. 46-2, pp. 2, 12-16).

The evidence before the Court shows that Plaintiff filed five informal grievances while at the GDCP. Four of the five grievances were not fully exhausted in accordance with the GDC SOP and in accordance with Section 1997e(a) and must be dismissed. Three of those grievances—Plaintiff's first, second and fifth grievances—concern issues that are not relevant to this lawsuit. Only Plaintiff's third grievance, filed on May 29, was arguably exhausted. In an abundance of caution, this Recommendation considers those claims on their merits.

The evidence is inconclusive regarding the exhaustion of Plaintiff's third informal grievance, filed on May 29. In that grievance, Plaintiff requested "handicap rails in E-house and in each shower in E-house and every other Dorm[] where there is no handicap rails." (Doc. 1, p. 41; Doc. 46-2, p. 4). Ten days later, on June 8, Plaintiff allegedly suffered from a slip-and-fall in the E-house shower. (Doc. 1, p. 5). The Defendants claim that Plaintiff "dropped" his May 29 informal grievance, but Plaintiff argues in his log reports that he was denied a formal grievance form, (Doc. 1, pp. 11, 16, 18, 22, 36), and that he was pressured to "sign off" on his informal grievance due to fear of reprisals. (Doc. 1, pp. 11-12; 39). Plaintiff also included with his Complaint a purported sixth informal grievance—which the Defendants do not acknowledge—in which Plaintiff claimed that his grievance counselor "refuse[d] to let [him] have a formal grievance by forcing [him] to sign off on the [May 29] informal Grievance." (Doc. 1, p. 39). The

purported sixth informal grievance, dated June 7, is not signed by any GDCP official, but Plaintiff has clearly written in the form's margins: "No one would sign it." (*Id.*). Because Defendants do not address Plaintiff's claim that he was not allowed to file a formal grievance, it is not clear that they have met their burden, at step two of the *Turner* review process, of demonstrating that Plaintiff failed to exhaust his *available* administrative remedies. Accordingly, in an abundance of caution, it is recommended that the Court find that Plaintiff exhausted his available administrative remedies regarding his May 29 grievance.

Because the evidence shows that Plaintiff's other four grievances were not fully exhausted, it is recommended that all claims not related to the May 29 grievance be dismissed for failure to exhaust. Plaintiff's first informal grievance, filed on April 22, concerned the lack of "proper foot wear for [Plaintiff's] diabetic condition." (Doc. 46-2, p. 4). According to the Defendants, this grievance was rejected because "additional pages were included with the Informal Grievance form." (*Id.*). Plaintiff does not argue that the Defendants improperly rejected his April 22 grievance, and he fails to explain why he did not pursue subsequent steps in the GDC's three-step grieving procedure. Accordingly, under step one of the *Turner* review process, any claims Plaintiff sought to base on his April 22 grievance should be dismissed for failure to exhaust.

Plaintiff's second informal grievance, filed on May 7, concerned the denial of "showers and soft shoes." (Doc. 46-2, p. 4). The Defendants claim that Plaintiff "dropped" his May 7 grievance, and Plaintiff fails to explain why he did not pursue subsequent steps in the GDC's three-step grieving procedure. Accordingly, under step one of the *Turner* review process, any claims Plaintiff sought to base on his May 7 grievance should be also dismissed for failure to exhaust.

Plaintiff's fifth informal grievance was filed on July 25, and it therefore post-dates the filing of Plaintiff's Complaint on July 24.[1] (Doc. 46-2, p. 5; Doc. 1-2, p. 1). Section 1997e(a) requires that prisoners fully exhaust their administrative remedies *before* filing a lawsuit in federal court. *See, e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 105 (2006). Accordingly, under step one of the *Turner* review process, any claims Plaintiff seeks to base on his July 25 grievance should also be dismissed for failure to exhaust.

Plaintiff's fourth informal grievance was filed after the alleged June 8 slip-and-fall incident, and asks for wheelchair accommodations rather than handrails in the shower area.[2] (Doc. 1, p. 41). The informal grievance, dated June 29, was rejected because it was "filed out of time." (Doc. 46-2, pp. 4-5). While Plaintiff disputes the untimeliness of his fourth informal grievance, (Doc. 7, pp. 2-3), he fails to explain why he did not pursue subsequent steps in the GDC's three-step grieving procedure. The attempted exhaustion of administrative remedies is mandatory even when the grievance procedures set forth by a prison may be futile. *Alexander v. Hawk*, 159 F.3d 1321, 1326 (1998). Accordingly, Plaintiff fails at step one of the *Turner* review process, and any claims that Plaintiff sought to base on his June 29 grievance should be dismissed for failure to exhaust.

### ANALYSIS OF PLAINTIFF'S CLAIMS BASED ON HIS MAY 29 GRIEVANCE

Because Plaintiff arguably exhausted only his May 29 grievance, Plaintiff may proceed on the merits of the claims raised in that grievance. *See Jones v. Bock*, 549 U.S. 199, 219-24 (2007). As a result, the issues relevant to the review of the Defendants' Motion to Dismiss are: (1) whether Plaintiff may seek an order compelling the GDCP to install handrails; (2) whether

---

[1] Under the "prison mailbox rule," the date of filing is the date of delivery to prison officials. *See, e.g., Garvey v. Vaughn*, 993 F.2d 776, 783 (holding that in § 1983 cases, "*the date of filing shall be that of delivery to prison officials* of a complaint or other papers destined for district court for the purpose of ascertaining timeliness").

[2] In his fourth informal grievance, Plaintiff requested "ramps to showers, non-slip flooring, shower chairs, cell doors wider for wheelchairs, [and] wider doors on cells where phones are at." (Doc. 1, p. 41).

Plaintiff may recover monetary damages under § 1983 based on the alleged June 8 slip-and-fall; and (3) whether Plaintiff may recover monetary damages under Title II of the ADA for (a) the alleged June 8 slip-and-fall; and (b) the lack of handrails in E-house during the time Plaintiff was housed in the GDCP.

Liberally construed, Plaintiff's Complaint seeks both monetary damages and injunctive relief under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA). Although the Defendants, in their Motion to Dismiss, separately evaluated Plaintiff's claims in light of the Rehabilitation Act, "causes of action brought under Title II of the ADA and the Rehabilitation Act are essentially identical." *Everett v. Cobb County School Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998). Therefore, the Court need not separately assess Plaintiff's Complaint under the Rehabilitation Act.

## INJUNCTIVE RELIEF

Plaintiff lacks standing to seek the requested injunctive relief under both § 1983 and Title II of the ADA. In the Eleventh Circuit, the general rule is that the transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive relief. *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007), abrogated on other grounds by *Sossamon v. Texas*, 131 S.Ct. 1651 (2011); *see also Walker v. Walker*, No. 5:11-cv-360 (CAR) (MSH), 2012 WL 3610526 at *4 n.1 (M.D.Ga. June 15, 2012) (stating that a prisoner's claims for injunctive relief under § 1983 and Title II of the ADA were "dismissed as moot because Plaintiff ha[d] been transferred"). "The reason for this rule is that injunctive relief is 'a prospective remedy, intended to prevent future injuries,' and, as a result, once the prisoner has been released, the court lacks the ability to grant injunctive relief and correct the conditions of which the prisoner complained." *Smith*, 502 F.3d at 1267. Because Plaintiff was transferred from the GDCP in September 2012,

this Court cannot now grant Plaintiff an order compelling the GDCP to install handrails. Accordingly, it is recommended that Plaintiff's claims for injunctive relief under both § 1983 and Title II of the ADA be dismissed.

## MONETARY DAMAGES UNDER § 1983

Plaintiff fails to state a claim for relief under § 1983, and he is therefore not entitled to recover monetary damages based on the alleged June 8 slip-and-fall. Although a prison official's "deliberate indifference to a substantial risk of serious harm" violates the Eighth Amendment, *Farmer v.* Brennan, 511 U.S. 825 (1994), courts around the country have uniformly held that the risk of slipping and falling in the shower is not a "substantial risk of serious harm." *See Smith v. Brown*, 1:12-CV-328-TWT-JSA, 2012 WL 5392154 at *2 (N.D. Ga. Sept. 25, 2012) (citing numerous cases from multiple jurisdictions[3]). A slip-and-fall claim is typically a negligence

---

[3] The relevant portion of the *Smith v. Brown* opinion states:

> Even if, as Plaintiff alleges, Defendants were aware that the shower shoes were slippery combined with wet and/or mopped floors, Plaintiff has not demonstrated that his claim constitutes anything more than negligence—which is not actionable under § 1983. *See Martin v. City of N.Y.,* No. 11 Civ. 600(PKC)(RLE), 2012 WL 1392648, at *9 (S.D.N.Y. Apr. 20, 2012) (dismissing prisoner's deliberate indifference claim that the inadequate soles on his prison-issued shoes caused him to slip and fall on the wet floor because "bodily injuries sustained from a slip-and-fall on a wet floor simply do not rise to the level of a constitutional violation"); *Wynn v. Ankoh,* No. 1:04 CV 37(WLS), 2006 WL 2583370, at *1–2 (M.D.Ga. Sept.6, 2006) (holding prisoner's allegations that the prison choice of floor cleaner and lack of adequate shoes caused his fall are nothing more than negligence which is not cognizable under § 1983). *See also Noble v. Grimes,* 350 F. App'x 892, 893 (5th Cir.2009) (dismissing plaintiff's deliberate indifference claims against officers where plaintiff alleged that he slipped and fell in standing water in the shower and contended that officers knew of dangerous conditions and failed to take preventative measures, because at the most his allegations constituted negligence which is not actionable under § 1983); *Reynolds v. Powell,* 370 F.3d 1028, 1031 (10th Cir.2004) (concluding that although prisoner complained for two months about the accumulated water in the shower and eventually slipped and sustained injuries, "while the standing-water problem was a potentially hazardous condition, slippery floors constitute a daily risk faced by members of the public at large" and is not a sufficiently serious risk of constitutional dimension); *Bell v. Ward,* 88 F. App'x 125, 126–27 (7th Cir.2004) (dismissing as negligence § 1983 claim complaining about officers' failure to clean up known water in cell block which caused plaintiff to slip and fall); *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir.1993) ("[S]lippery prison floors ... do not state even an arguable claim for cruel and unusual punishment."); *Denz v. Clearfield Cty.,* 712 F.Supp. 65, 66 (W.D.Pa.1989) (finding no Eighth Amendment claim based on slippery floor in prison cell, despite officials' alleged knowledge of hazard). Thus, Plaintiff's slipand-fall claim should be dismissed.

*Smith v. Brown*, 2012 WL 5392154 at *2.

action arising under state law, and it is well established that Section 1983 "must not be used as a font of tort law to convert state tort claims into federal causes of action." *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007). Accordingly, it is recommended that Plaintiff's § 1983 claim for monetary damages be dismissed.

### MONETARY DAMAGES UNDER TITLE II OF THE ADA

Because Plaintiff also fails to state a claim for relief under Title II of the ADA, he may not recover damages for either the June 8 slip-and-fall or for the lack of handicap rails in E-house during the time Plaintiff was housed in the GDCP. In order to state claim for relief under Title II, "a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082-83 (11th Cir. 2007). To recover compensatory damages, though, a plaintiff must additionally show (4) "intentional discrimination or bad faith." *See, e.g., Ortega v. Bibb County School Dist.*, 431 F.Supp.2d 1296, 1299-1302 (M.D. Ga. 2006). Because Plaintiff likely fails to satisfy any of the four required elements, it is recommended that his Title II claim for damages be dismissed.[4]

---

[4] The Defendants also argued, without providing any analysis, that Plaintiff failed to allege a constitutional violation, and that his ADA claims were therefore barred by the Eleventh Amendment. (Doc. 46-1, pp. 10-12). Because Plaintiff failed to state a claim for relief under the ADA, the Court need not determine whether Plaintiff's allegations fall squarely within the bounds of a constitutional, rather than a mere statutory, injury. *See U.S. v. Georgia*, 546 U.S. 151, 159 (2006) ("insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity").

**(1) QUALIFIED INDIVIDUAL WITH A DISABILITY**

Because Plaintiff fails to show that he has a disability, he is not a "qualified individual with a disability" under 42 U.S.C. § 12131(2). Title II of the ADA prohibits "public entities"[5] from discriminating against "qualified individuals with disabilities." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007). The ADA defines "disability" as (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). "Major life activities," in turn, include "caring for oneself," and also "walking, standing, lifting [and] bending." 42 U.S.C. § 12102(2).

Plaintiff's Complaint and subsequent filings largely address Plaintiff's post-slip-and-fall disabilities, but those disabilities are not relevant to the instant action because Plaintiff failed to exhaust his June 29 grievance.[6] Only twice did Plaintiff indicate that he suffered from a pre-slip-and-fall disability, and in both instances, Plaintiff provided insufficient factual detail. First, in the log report filed with his Complaint, Plaintiff claimed that he had "been disabled since 2006 so [that he] walk[ed] with a cane." (Doc. 1, p. 34). In that same report, Plaintiff also stated that he had a "no standing profile." (*Id.*). Second, in his Response to the Defendants' Motion to Dismiss, Plaintiff claimed, without further elaborating, that he had "been disabled since Nov 2006 per Social Security Admin." (Doc. 53, p. 1). These meager statements, composed primarily of conclusory assertions, are insufficient to satisfy federal pleading requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-87 (2009) ("Although for purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal

---

[5] State prisons are public entities. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

[6] Even if he had exhausted his June 29 grievance, Plaintiff has not adequately demonstrated that his slip-and-fall injuries will result in a "permanent or long term impact." *See, e.g., Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 911 (1996); *see also Rakestraw v. Carpenter Co.*, 898 F.Supp. 386, 390 (N.D. Miss 1995) ("Temporary injuries with no permanent effects are typically not considered disabilities under the ADA").

conclusion couched as a factual allegation"). Accordingly, the Court cannot conclude that Plaintiff is a "qualified individual with a disability" under the ADA.

**(2) DENIED THE BENEFITS OF A PUBLIC ENTITY'S SERVICE**

Although prison showers are likely a "public entity's service," Plaintiff fails to show that he was denied access to the E-house shower in violation of Title II of the ADA. Indeed, in order for Plaintiff to have suffered his June 8 slip-and-fall, he must have been provided access to the shower. *Cf. Kiman v. New Hampshire*, 451 F.3d 274, 287 (1st Cir. 2006) (holding that a prisoner arguably was denied access to a shower chair, which he had previously requested, where the evidence showed that "a shower chair was brought near the showers . . . for [the prisoner's] use, but corrections officers would sit on the chair and refuse to allow him to use it"). Here, again, Plaintiff's Complaint largely addresses accessibility problems arising *after* the June 8 slip-and-fall, when Plaintiff was allegedly wheelchair-bound. As discussed above, though, those accessibility problems are not relevant to the instant action because Plaintiff failed to exhaust his June 29 grievance. Accordingly, because Plaintiff cannot show that he was denied access to the E-house shower *before* June 8, he cannot obtain relief under the ADA.

**(3) BY REASON OF THE DISABILITY**

Although Plaintiff might argue that he was constructively denied shower benefits, or that he was otherwise discriminated against "by reason of his disability," it is not at all clear that Plaintiff has the right to raise such a claim. As the Defendants note, Title II does not appear to require modification or accommodation, unlike Titles I and III. *See Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 n.13 (2007). Therefore, it is far from certain whether Plaintiff may sue the Defendants under Title II of the ADA for failing to install handrails.

The Defendants acknowledge that the Attorney General has promulgated regulations pursuant to 42 U.S.C. § 12134(a), but they argue—citing *Alexander v. Sandoval*, 532 U.S. 275 (2001)—that insofar as the regulations grant a private right of action to sue for modification or accommodation, the regulations are overbroad. (Doc. 46-1, pp. 21-25). The Defendants wholly failed to discuss the applicable regulations, though, as they ought to have. *See, e.g., American Ass'n of People with Disabilities v. Harris*, 605 F.3d 1124, 1135 n.24 (11th Cir. 2010) (vacated on other grounds) (noting that Courts must examine each ADA regulation individually to see if it evinces congressional intent to grant a private right of action). Therefore, although ample language in Eleventh Circuit cases appears to support the Defendants' general argument, it is recommended that the Court not grant the Defendants' motion on the grounds that Plaintiff may not sue for modification or accommodation under Title II of the ADA.

**(4) INTENTIONAL DISCRIMINATION**

Fourth, and finally, Plaintiff failed to state a claim under the ADA because he failed to show "intentional discrimination or bad faith." *Boyer v. Tift County Hospital Authority*, No. 7:06-cv-027 (HL), 2008 WL 2986283 at *6 (M.D. Ga. July 31, 2008) (citing *Wood v. President & Trustees of Spring Hill College in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992)).

In the Eleventh Circuit, "intentional discrimination" is properly evaluated under the standard of "deliberate indifference." *See Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 344-48 (11th Cir. 2012) (holding that the "deliberate indifference" standard applies in the context of lawsuits filed under § 504 of the Rehabilitation Act). Therefore, in order to succeed on his ADA claim for compensatory damages, Plaintiff must show that the Defendants "*knew* that harm to a federally protected right was substantially likely and [that the Defendants] *failed* to act on that likelihood." *Id.*

Apart from making several conclusory assertions, which the Court need not accept as true, Plaintiff failed to indicate how Defendants Humphrey, Harper, Smith, Fowlkes, Owens and Scott had any knowledge of Plaintiff's request for handrails or other disability accommodations. (*See, e.g.,* Doc. 53, p. 1) ("The ones I listed as my Defendants have the Duty to know if [their] Prison is up to Code"). Without subjective knowledge of either Plaintiff's requests or of the general need for handrails, these Defendants could not possibly have been "deliberately indifferent."

Defendant Malone, on the other hand, arguably had knowledge of Plaintiff's requests for handrails due to her role as "Deputy Warden of Care & Treatment." The GDC SOP provides that the "Deputy Warden of Care and Treatment will forward a copy of [any] informal grievance[s] to the area supervisor with directives," and the duty of issuing such directives presumably requires a review of informal grievances. (Doc. 46-2, p. 13). Indeed, Defendant Malone's name appears of Plaintiff's May 29 informal grievance form. (*See* Doc. 1, p. 38). Nevertheless, even if Defendant Malone had subjective knowledge of Plaintiff's requests for handrails, Plaintiff failed to allege facts to indicate that Defendant Malone "*knew* that harm to a federally protected right was substantially likely." In other words, because Plaintiff cannot show that the lack of handrails in the E-house shower resulted in "discrimination" or the "denial of a benefit," Plaintiff cannot show that Defendant Malone deliberately ignored a substantial risk of harm to Plaintiff's federally protected rights. *Cf. Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 352 (11th Cir. 2012) (holding that medical personnel were arguably deliberately indifferent for failing to provide "appropriate aids that were *necessary to ensure effective communication*") (emphasis added). Accordingly, it is recommended that Plaintiff's claim for compensatory damages be dismissed.

## <u>CONCLUSION</u>

In accordance with the analysis above, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 14th day of December, 2013.

<u>s/ Charles H. Weigle</u>
Charles H. Weigle
United States Magistrate Judge